UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

IN RE:                              )
                                    )    Chapter 11
Androscoggin Energy LLC,            )
                                    )    Case No. 04-12221
            Debtor.                 )

## ORDER AUTHORIZING RULE 2004 EXAMINATION OF DEBTOR

This matter having come before the Court on the joint Motion of TransCanada Gas Services Inc. and Portland Natural Gas Transmission System (collectively, the "Movants") for an Order Authorizing Rule 2004 Examination of Debtor [Docket No. 527] (the "Motion"), after such notice and opportunity for hearing as was required by the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, the Federal Rules of Bankruptcy Procedure (the "Rules"), and this Court's local rules, this Court having conducted an expedited hearing on the Motion on July 20, 2005, this Court having considered the Objection to the Motion [Docket No. 541] (the "Debtor's Objection") filed by the above-captioned debtor and debtor-in-possession ("Debtor") and the Limited Objection to the Motion [Docket No. 539] ("IP's Limited Objection") filed by International Paper Company ("IP"), no other party in interest having filed or raised any objection or other response to the Motion or the relief sought thereby, and after due deliberation and sufficient cause appearing therefor; it is hereby ORDERED, ADJUDGED, AND DECREED THAT:

    1.    The Motion is **GRANTED WITH LIMITATIONS,** as set forth herein; and

    2.    The Debtor's Objection is **SUSTAINED, IN PART, AND OVERRULED, IN PART,** as set forth herein. IP's Limited Objection is **SUSTAINED** on the terms set forth herein.

    3.    Subject to Paragraph 7 below, the Court finds that the Movants' request for

examination is within the scope of Rule 2004 and that discovery under the broad scope of Rule 2004 is permissible at this time and allowable in this chapter 11 case; and

4. Within 30 days of the entry of this Order, Debtor shall produce the documents responsive to the Movants' Request, which is attached to this Order as Exhibit "A" and expressly incorporated herein, or seek a protective order against the portions of such document production to which Debtor objects. Within 30 days of the entry of this Order, Debtor shall produce to Movants those documents to which it does not object. Documents shall be produced at the offices of Michael J. Pearce & Associates, LLC, Two Monument Square, 9th Floor, Portland, Maine; and

5. Within 30 days of the entry of this Order, Debtor shall identify one or more witnesses for examination according to Movants' Request, or seek a protective order against such examination to which Debtor objects. Such witness or witnesses shall be officers, directors, managing agents, or employees of Debtor who have knowledge of the matters described in Movants' Request. The examination shall occur at the offices of Michael J. Pearce & Associates, LLC, Two Monument Square, 9th Floor, Portland, Maine at a date (or dates) and time (or times) to be agreed upon by the Movants and the Debtor after consultation with IP; however, IP shall not have veto rights regarding scheduling of the examination; and

6. IP is authorized to attend all examinations conducted by the Movants pursuant to this Order. Debtor shall provide IP with copies of all documents produced or otherwise made available to the Movants in connection with the Rule 2004 examination of the

       Debtor concurrently with providing such documents to the Movants. The information previously redacted from the Energy Services Agreement between Debtor and IP (the "ESA") is excluded from the scope of the Rule 2004 examination of the Debtor and document production at this time. However, nothing in this Order shall prejudice or limit the rights of any party in interest, including the Movants, to seek the information redacted from the ESA in any further Rule 2004 examination, if appropriate, or in discovery in connection with any future contested matter or adversary proceeding in which the ESA is implicated, including, without limitation, with respect to any motion to assume or assume and assign the ESA, any motion to reject the ESA and any request for the approval of a disclosure statement or confirmation of a plan of reorganization addressing the ESA. At the time of any such event, any party in interest, including the Movants, may request a copy of the unredacted ESA and related materials. IP, the Debtor, and other parties retain the right to object to any such discovery request. In any event, any production of the unredacted ESA shall be subject to appropriate provisions to protect the confidential and commercially sensitive information therein.

7.    The Debtor's production of documents and witness(es) pursuant to this Order shall be subject to the Debtor's rights under Fed. R. Bankr. P. 7026, Fed. R. Civ. P. 26(b) and (c), D. Me. LBR 2004-1, and any other rules or privileges regarding confidential or commercially-sensitive information.

Dated:   July 27, 2005

/s/ Louis H. Kornreich
_____
Honorable Louis H. Kornreich
United States Bankruptcy Judge

# EXHIBIT A

# Movants' Request

## PART 1 – TOPICS FOR EXAMINATION

1. Historic business operations of the Debtor, including the operation of the Facility.

2. Business operations of the Debtor since suspension of operations at the Facility, including the business operations of the Debtor since commencement of the Debtor's case under Chapter 11 of the United States Bankruptcy Code.

3. The Debtor's current and historic financial position.

4. All analysis performed by the Debtor regarding potentially re-commencing operations at the Facility, and any activity being undertaken or potentially to be undertaken in furtherance of re-commencing operations at the Facility.

5. All forward-looking plans and forecasts of the Debtor.

6. Any plan by the Debtor to reorganize, and any activity being undertaken or potentially to be undertaken in furtherance of any such plan.

7. The present condition of the Debtor's estate and the expected future condition of the Debtor's estate.

8. The structure of Androscoggin Energy, LLC, its members, the ownership interest and responsibility of each member with respect to Debtor, all parent and subsidiary companies of Debtor, and all boards, committees, and subcommittees of Debtor.

9. The assets of the Debtor's estate, including without limitation any valuations of such assets since commencement of the Debtor's Chapter 11 case.

10. Costs, expenses, liabilities, and/or other financial obligations of the Debtor that have been incurred since commencement of the Debtor's Chapter 11 case, are being incurred at present, or are expected to be incurred in the future.

11. Any revenue that is being generated by the Debtor or may be generated by the Debtor.

12. All matters related to the Debtor's financial statements and tax returns.

13. All matters related to the Debtor's operating agreements, including without limitation the Amended and Restated Operating Agreement.

14. All matters related to all agreements between the Debtor and any other person or entity for the sale or transmission by the Debtor of electric power, including without limitation

                any agreements with Central Maine Power, International Paper, and Constellation New Energy.

15. All matters related to all agreements between the Debtor and any other person or entity for the sale of thermal energy and/or steam, including without limitation the Energy Services Agreement between the Debtor and International Paper.

16. All taxes for which the Debtor is or may become liable.

17. Work being performed, or expected to be performed, by professionals retained by the Debtor, including without limitation Bernstein, Shur, Sawyer & Nelson; Osler, Hoskin & Harcourt LLP; Quinlan & Carroll, Ltd.; Mesirow Financial; and PricewaterhouseCoopers.

18. All matters related to all agreements and relationships between the Debtor and any of its secured or unsecured lenders.

19. Work being performed, or expected to be performed, by or on behalf of the Debtor's secured lenders, which Debtor is or may be responsible to pay.

20. All matters related to the Debtor's Canadian bankruptcy (CCAA) proceedings, including without limitation work being performed, or expected to be performed, which the Debtor is or may be responsible to pay.

21. All matters related to continuing loss to or diminution of the Debtor's estate.

22. All matters related to the presence or absence of a reasonable likelihood of rehabilitation of the Debtor.

23. All matters related to the Debtor's ability or inability to effectuate a plan of reorganization.

24. The timing of all actions that have been taken by the Debtor and all potential future actions being contemplated by the Debtor.

25. All matters related to the documents requested on Exhibit B to this Motion.

26. All other matters relevant to this bankruptcy case.

# PART 2 – REQUEST FOR PRODUCTION OF DOCUMENTS

## DEFINITIONS

1. "Debtor" shall mean Androscoggin Energy, LLC, and each of its members, employees, agents, and attorneys.

2. "Document" and "documents" shall have shall have the broadest meaning allowed under the Federal Rules of Bankruptcy Procedure and Federal Rules of Civil Procedure and shall include, without limitation, the following items, whether printed, reproduced, stored or written by hand, or recorded or created by any process, and whether or not claimed to be privileged or otherwise excludable from discovery, *namely*: notes, correspondence, reports, communications, telexes, telegrams, facsimiles, e-mails, electronically stored information, computer data, computer discs, hard drives, videotapes, magnetic tapes, memoranda, summaries or records of telephone conversations, research reports, notebooks, charts, lists, schedules, plans, proposals, drawings, photographs, diagrams, diaries, studies, evaluations, financial analyses, worksheets financial model spreadsheets, minutes or records of meetings including directors' meetings and committee meetings, opinions or reports of consultants, agreements, contracts, reports or summaries of negotiations, court papers, administrative agency papers, transcripts, press releases, radio tapes, story boards, recordings, and drafts of documents. The terms shall include all non-identical copies or versions of any of the above.

3. "Relating to" or "relate to" means consisting of, constituting, concerning, referring to, embodying, comprising, reflecting, identifying, stating, dealing with, commenting on, responding to, describing, evidencing, analyzing, containing information concerning, or in any way pertaining to the subject matter of this Document Request, whether directly or indirectly.

## REQUESTED DOCUMENTS

All documents that consist of, or are described as:

1. All reports, analysis, and related documents regarding re-commencing operation of the Plant.

2. All documents that relate to any activity being undertaken or potentially to be undertaken in furtherance of re-commencing operations at the Facility.

3. All forward-looking plans and forecasts of the Debtor, and all documents providing the basis or backup for such plans and forecasts.

4. Any plan by the Debtor to reorganize, and any draft thereof, whether such plan is final or simply under consideration.

5. All documents that relate to any activity being undertaken or potentially to be undertaken in furtherance of any such plan.

6. Documents sufficient to show the structure of Androscoggin Energy, LLC, its members, the ownership interest and responsibility of each member with respect to Debtor, all parent and subsidiary companies of Debtor, and all boards, committees, and subcommittees of Debtor.

7. Documents sufficient to show all assets of the Debtor's estate, including without limitation all valuations of such assets since commencement of the Debtor's Chapter 11 case.

8. Documents sufficient to show all costs, expenses, liabilities, and/or other financial obligations of the Debtor that have been incurred since commencement of the Debtor's Chapter 11 case, are being incurred at present, or are expected to be incurred in the future.

9. Documents sufficient to show all revenue, if any, currently being generated by the Debtor or which may be generated by the Debtor at any time over the next 12 months.

10. All operating budgets prepared by or for the Debtor reflecting current and/or future anticipated operating expenses and costs, including any projected operating budgets under any reorganization scenario contemplated by the Debtor.

11. The Debtor's detailed general ledger reflecting all disbursements and payees to whom the Debtor paid monies for the period from the Filing Date (November 26, 2004) to the present.

12. All statements with respect to all bank accounts, investment accounts, or similar accounts owned or held by the Debtor since the Filing Date.

13. All operating reports of Debtor filed with the office of the United States Trustee.

14. Monthly operating reports for the Plant from November 1, 1999, to the present.

15. Profit and loss statements for the Debtor from November 1, 1999, to the present.

16. The Debtor's balance sheets, income statements, and cash flow statements covering the period from January 1, 2000, to the present. (Annual statements for 2000, 2001, 2002, and 2003 are sufficient; monthly statements are requested from January 1, 2004, to the present.)

17. The Debtor's federal income tax returns (and any Canadian income tax returns that may have been filed) for all fiscal years ending in 2001, 2002, 2003, 2004, and if appropriate and currently available, 2005.

18. The Debtor's operating agreements, including without limitation the Amended and Restated Operating Agreement, and all related documents.

19. All contracts to which the Debtor is currently a party, whether currently assumed or not.

20. All documents evidencing or otherwise showing or relating to expected capital or non-capital expenditures that the Debtor will or may incur and which are not ordinary and recurring expenditures, and any and all documents reflecting or evidencing or relating to the possibility of extraordinary but anticipated increases in costs.

21. All agreements between the Debtor and any other person or entity for the sale or transmission by the Debtor of electric power, including without limitation any agreements with Central Maine Power, International Paper, and Constellation New Energy, and all related documents.

22. All agreements between the Debtor and any other person or entity for the sale of thermal energy and/or steam, including without limitation the Energy Services Agreement between the Debtor and International Paper, and all related documents.

23. Documents sufficient to show all taxes for which the Debtor is or may become liable.

24. All documents that relate to work being performed, or expected to be performed, by professionals retained by the Debtor, including without limitation Bernstein, Shur, Sawyer & Nelson; Osler, Hoskin & Harcourt LLP; Quinlan & Carroll, Ltd.; Mesirow Financial; and PricewaterhouseCoopers.

25. All agreements and relationships between the Debtor and any of its secured or unsecured lenders, and all related documents.

26. Documents sufficient to demonstrate any work being performed, or expected to be performed, which Debtor is or may be responsible to pay, which work is by or on behalf of the Debtor's secured lenders.

27. Documents sufficient to demonstrate any work being performed, or expected to be performed, which the Debtor is or may be responsible to pay, which work is in connection with the Debtor's Canadian bankruptcy (CCAA) proceedings.

28. All documents that Debtor may use to demonstrate the presence or absence of any continuing loss to or diminution of the Debtor's estate.

29. All documents that Debtor may use to demonstrate the presence or absence of a reasonable likelihood of rehabilitation of the Debtor.

30. All documents that Debtor may use to demonstrate the Debtor's ability or inability to effectuate a plan of reorganization.